# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **ROBERT J. PELLETIER** | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-0436 |
| | ) | (Crim. No. 3:16-cr-00147-8) |
| **UNITED STATES OF AMERICA** | ) | |

## MEMORANDUM OPINION

On April 21, 2017, Robert J. Pelletier pled guilty to his participation in a methamphetamine distribution conspiracy. He was sentenced to ten year's imprisonment on November 30, 2017, pursuant to an 11(C)(1)(c) Plea Agreement. Now before the Court is Pelleticer's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) alleging ineffective assistance of counsel. That motion will be denied in its entirety.

### I. Background

A federal grand jury returned a 27-count Superseding Indictment against Pelletier and nine others. Pelletier was charged in three counts as follows: (a) Count One – conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; (b) Count Twenty-Four – distribution and possession with intent to distribute a quantity of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and (c) Count Twenty-Five – possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Pelletier pled guilty to all three counts in exchange for a 120-month sentence.

Notwithstanding that he received exactly what was contemplated by the Plea Agreement, Pelletier claims that attorney Charles D. Buckholts was ineffective in four respects. First, Buckholts did not challenge a post-arrest statement that Pelletier made to law enforcement. Second, Buckholts "failed to argue any of the many cases similar to [Pelletier's]," resulting in "punishment meted out

. . . in excess of that prescribed by the relevant statutes." (Doc. No. 1 at 5). Third, Buckholts did not argue about the proximity of the firearms to the drugs, resulting in an enhanced charge and sentence under Section 924(c). Fourth, and related to the second point, Buckholts was allegedly ineffective because he "did not argue any case" similar to Pelletier's, but rather waited until other defendants had secured plea deals, and this resulted in a sentence that did not "come close" to the sentencing guidelines. (Id. at 6).

After the Motion to Vacate was filed, this Court appointed counsel and directed that an Amended Motion be filed. The Amended Motion as filed (Doc. No. 19) is limited to Pelletier's first and third claims.

## II. Standard of Review

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). Claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984), including claim of ineffectiveness "[i]n the context of guilty pleas," Hill v. Lockhart, 474 U.S. 52, 58 (1985). "'Surmounting Strickland's high bar is never an easy task'" because "[e]ven under *de novo* review, the standard for judging counsel's representation is a most deferential one[.]" Harrington v. Richter, 562 U.S. 86, 105 (2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)).

To establish an ineffectiveness of counsel claim, a defendant must first show that counsel's performance was deficient: "[a]n attorney's performance is deficient if it is objectively unreasonable under prevailing professional norms." Hodges v. Colson, 727 F.3d 517, 534 (6th Cir. 2013); see also McPhearson v. United States, 675 F.3d 553, 559 (6th Cir. 2012) (stating that burden is on the defendant to show that counsel was deficient). In this regard, "a court must indulge a strong

2

presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689. In fact, "[t]he Strickland Court held that petitioner must show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Sylvester v. United States, 868 F.3d 503, 510 (6th Cir. 2017) (quoting Strickland, 466 U.S. at 687).

"[A] defendant must [also] 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Lafler, 566 U.S. at 163 (quoting Strickland, 466 U.S. at 694)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Harrington, 562 U.S. at 105. "In making this showing, '[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Sylvester, 868 F.3d at 510 (quoting Strickland, 466 U.S. at 693). Rather, "[i]n the context of pleas, a defendant must show the outcome of the plea process would have been different with competent advice," Lafler, 566 U.S. at 163, meaning "that there is a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

### III. Discussion

Even though Amended Motion focuses exclusively on Claims One and Three, it specifically states that it is not intended to supersede the original motion. Accordingly, the Court is obliged to consider both the *pro se* claims filed by Pelletier, and those filed by counsel. Braden v. United States, 817 F.3d 926, 931 (6th Cir. 2016).

3

**A. Claim One**

After his arrest on January 14, 2016, Pelletier was questioned by law enforcement and gave a statement. He asserts counsel should have moved to suppress that statement because, at the time the statement was given, Pelletier was under the influence of alcohol, drugs, or both. In a reply brief in support of the Amended Motion, counsel additionally claims that Pelletier has "a long history of mental illness and was not in compliance with proper medication and treatment." (Doc. No. 19 at 6).

"It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession." Jackson v. Denno, 378 U.S. 368, 376 (1964). It is also true that the failure to file a meritorious motion to suppress can be ineffective. Hendrix v. Palmer, 893 F.3d 906, 923 (6th Cir. 2018). It does not follow, however, that the failure to file a motion to suppress an allegedly involuntary confession constitutes ineffectiveness *per se*. See McClary v. Conway, 492 F. App'x 157, 159–60 (2d Cir. 2012) (finding that it was a matter of "trial strategy" not to move to suppress statement when counsel learned that defendant's arrest resulted from his admissions to two informants); United States v. Taylor, 336 F. App'x 478, 481 (6th Cir 2009) (holding it was proper strategic choice to forego seeking suppression of statement where evidence of defendant's guilt was overwhelming).

Here, Buckholts has submitted an affidavit in which he avers that he made the decision not to pursue a motion to suppress Pelletier's statement based upon the evidence he received from the Government. This included a search warrant affidavit that stated (1) confidential sources told law enforcement authorities in April 2015, Pelletier was selling two ounces of crystal methamphetamine

to 10 to 15 customers weekly; (2) Frank Bishop, the alleged ringleader of the methamphetamine conspiracy then under investigation, was Pelletier's supplier; (3) in January 2016, police learned that Pelletier was selling approximately one ounce of crystal methamphetamine per day from his residence; and (4) on January 13, 2016, while Pelletier's residence was under surveillance, two individuals were arrested with methamphetamine in their possession and both told officers they had purchased the methamphetamine from Pelletier. Additionally, a search warrant of Pelletier's residence executed on January 14, 2016, led to the discovery of ammunition, a Smith and Wesson .40 caliber handgun on the bed in the master bedroom, and a .22 rifle and methamphetamine in the master bedroom closet. Some pills and drug paraphernalia were also found during the search. Buckholts also learned from the Assistant United States Attorney that the Government had ten recorded statements from individuals who indicated Pelletier sold large quantities of methamphetamine from his home, and that even Pelletier's own girlfriend claimed he sold drugs. Buckholts claims he discussed this evidence with Pelletier, but Pelletier decided to pursue a negotiated settlement through a plea agreement, rather than go to trial.

In his reply brief, however, Pelletier claims that Buckholts did not discuss the Government's evidence, nor did Buckhots advise Pelletier that it was not in his best interest to pursue a motion to suppress. Because of this dispute, Pelletier insists that he is entitled to an evidentiary hearing.

Unlike the initial Motion to Vacate which was signed under the pains and penalty of perjury, the Amended Motion is not, meaning that it does not comply with Rule 2(b) of the Rules Governing Section 2244 Proceedings. See United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995), rev'd on other grds, 520 U.S. 751 (1997) ("Facts alluded to in an unsworn memorandum [in support of a Section 2255 motion] will not suffice."); Reclusado v. United States, No. CR 10-0184 MMM, 2015

5

WL 10937887, at *3 (C.D. Cal. Aug. 20, 2015) ("A movant who contends that his attorney provided ineffective assistance must submit declarations, affidavits, or other admissible evidence to support his claim."). Generally, this deficiency is best remedied by requiring the motion to be refiled with an appropriate verification, or a supporting affidavit. See United States v. Guerrero, 488 F.3d 1313, 1317 (10th Cir. 2007) (requiring that movant be allowed to refile his amended claim in conformance with Rule 2); Kafo v. United States, 467 F.3d 1063, 1069-71 (7th Cir.2006) (stating that "better practice under the Advisory Committee Notes is to allow movant to resubmit motion "under oath or by attaching an affidavit'). However, that approach is unnecessary here because Pelletier's present contentions are directly contradicted by the record. Nor is an evidentiary hearing warranted.

Under Section 2255(b), an evidentiary hearing "is required unless the record conclusively shows that the petitioner is entitled to no relief." Campbell v. United States, 686 F.3d 353, 357 (6th Cir. 2012). Even though the burden "for establishing an entitlement to an evidentiary hearing is relatively light," Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999), "'a district court may . . . forego a hearing where 'the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact,'" Martin v. United States, 889 F.3d 827, 832 (6th Cir. 2018) (quoting MacLloyd v. United States, 684 F. App'x 555, 559 (6th Cir. 2017)). That is the situation here.

Not only is Pelletier's suggestion that Buckholts did not discuss either the Government's evidence or the propriety of a motion to suppress inherently incredible, it is contradicted by his Plea Petition, his Plea Agreement, and his guilty plea. In his Plea Petition, signed in open court under the pains and penalty of perjury, Pelletier acknowledged that he had received a copy of the Superseding Indictment, read and discussed it with Buckholts, and felt that he understood every accusation made

6

against him. (Case No. 3-16-cr-147-08, Doc. No. 249, ¶ 3). Pelletier also stated:

> I have had sufficient opportunity to discuss with my lawyer the facts and surrounding circumstances concerning the matters mentioned in the indictment. My lawyer has counseled and advised me as to the nature and cause of every accusation against me. We have thoroughly discussed the government's case against me and my potential defenses to the government's case. My lawyer has explained each element of the crime charged to me and what the government would offer to prove these elements beyond a reasonable doubt.

(Id. ¶ 4). Pelletier further admitted that Buckholts had "done all the investigation and research in this case that I have asked him to do, and has reviewed with me the discovery material provided by the Government." (Id. ¶ 11). Similarly, during his plea colloquy, after being duly sworn, Pelletier acknowledged that he had discussed the charges with his lawyer, and shared information that might be useful to his defense. (Case No. 3:16-cr-147-08, Doc. No. 447, Tr. at 7-8). Pelletier also affirmatively indicated that he was satisfied with Buckholts' representation and indeed had no complaints about his services. (Id. at 10). He further stated on several occasions that he did not need any additional time to discuss the case with his lawyer. (Id. at 8, 11, 12 & 24).

A plea colloquy is a solemn event and "dispositions by guilty pleas are accorded a great measure of finality." Blackledge v. Allison, 431 U.S. 63, 71 (1977). Because courts must be able to rely on a defendant's statements during a plea colloquy, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" United States v. McMaster, 403 F.3d 216, 221 (4th Cir. 2005)(collecting cases).

Moreover, Pelletier cannot establish either the deficient performance or the prejudice prong of Strickland. For purposes of the deficient performance prong, "the meritorious nature of the motion must be so plain that 'no competent attorney would think a motion to suppress would have

7

failed,'" and "petitioner also must show that counsel had no reasonable strategic rationale for not filing the motion." Hendrix v. Palmer, 893 F.3d 906, 922 (6th Cir. 2018). Given the evidence Buckholts had reviewed, it was entirely reasonable for him to forego possibly raising the ire of the prosecutor by moving to suppress Pelletier's statement, and instead focus on achieving the best possible plea bargain. As for prejudice, the Government submits – and Pelletier does not dispute – that it had plenty of evidence apart from his post-arrest statement to convict him at trial, including several other inculpating statements made by Pelletier that established his involvement in the drug conspiracy; suppliers and customers who were willing to testify at trial; a distribution amount of methamphetamine and a gun found in a closet in Pelletier's residence (with another firearm and ammunition nearby); and statements by Pelletier's girlfriend that implicated him in the conspiracy.

## B. Claim 3

For much the same reason, Pelletier's third claim involving the Section 924(c) enhancement fails. In his Motion, Pelletier asserts that there was "a debate about the proximity of the firearm to the drugs" which resulted in a sentencing enhancement and that, while Buckholts claimed to have "discussed it with the D.A.," Pelletier never saw any proof of that. (Doc No. 1 at 7). In his affidavit, Buckholts avers that, not only did he discuss the firearm charge with Pelletier, he discussed the elements the Government was required to prove, and believes that he left a copy of the Sixth Circuit Pattern Jury Instructions that set forth the elements with Pelletier for his review. Buckholts also claims that he told Pelletier the evidence the Government would likely rely upon to support the enhanced charge, including (1) the location of the firearms (on the bed and in the closet next to illegal drugs); (2) testimony that Pelletier frequently sold drugs from the residence; (3) the nearness in time between the purchase of drugs from the residence and the discovery of the firearms during

8

the search; (4) that Pelletier was not even allowed to possess a firearm because he was a convicted felon; and (5) given all of the foregoing, the likelihood that a jury would not believe the guns were in the home for self defense.

In his unverified reply, Pelletier asserts that the guns were in the home for his wife's protection, not to facilitate the sale of drugs. Further, while he concedes that a copy of the jury instructions with the elements was left with him, he claim that he did not understand them. Again, these new assertions are totally undercut by the record surrounding his guilty plea.

As noted previously, in his Plea Petition, Pelletier acknowledged under oath that he and his lawyer had "thoroughly discussed" all of the accusations in the Superseding Indictment, the Government's evidence, and potential defenses. Pelletier also acknowledged that his lawyer discussed with him the elements of each crime, and what the Government had to prove. Those elements were also spelled out for Pelletier during the plea colloquy, and he stated under oath that he understood them. Further, during the plea colloquy, as well as in his Plea Agreement, Pelletier admitted that he possessed a Smith and Wesson .40 caliber handgun and a Remington .22-caliber rifle to further his drug trafficking activities. While he now claims not to have understood the elements, that is entirely inconsistent with what he swore to under oath at his plea hearing. His statement that he has an Associate's Degree, and his acknowledgment that he has "a good understanding and use of the English language," (Case No. 3:16-cr-00147, Tr. at 5), also belie that he could not understand the plain statements in his plea or the elements.

Further, and as with Claim One, Pelletier cannot show the deficient performance or prejudice required by Strickland. Pelletier claims counsel was ineffective because, contrary to counsel's representation, he never saw any proof that the Government was approached about dismissing the

gun enhancement. However, with its reply, the Government attached an e-mail string that indicated Buckholts asked that the Section 924(c) charge be dismissed so that Pelletier could participate in the Residential Drug Abuse Program while in the Bureau of Prisons, but the Government refused that request. (Doc. No. 26-3 at 3).

Insofar as Pelletier suggests that Buckholts should have somehow sought pretrial dismissal of the Section 924(c) enhancement by the Court, that is a nonstarter. Whether a firearm is used in furtherance of a drug trafficking crime is a factual question and depends upon whether there is "a specific nexus between the gun and the crime charged," and whether the firearm "was strategically located so that it is quickly and easily available for use." United States v. Mackey, 265 F.3d 457, 462 (6th Cir. 2001). A jury could easily determine that a handgun found on the bed in the master bedroom and a rife found in the bedroom closet where methamphetamine was also located were there to further a drug trafficking crime. See United States v. Ray, 803 F.3d 244, 264–65 (6th Cir. 2015) (stating that "specific nexus" between firearm and drug trafficking offense existed where, during the course of a search, a handgun was in a jacket pocket in the same closet as a separate jacket that contained crack cocaine); United States v. Ham, 628 F.3d 801, 808–09 (6th Cir.2011) (stating that a reasonable trier of fact could have found a pistol on top of armoire just outside of a closet containing crack cocaine in defendant's residence was possessed in furtherance of drug trafficking).

## C. Claims Two and Four

In Claim Two, Pelletier argues "[t]he punishment meted out was in excess of that prescribed by the relevant statute." (Doc. No. 1 at 5). In Claim Four, Pelletier states that Buckholts told him he "could get 20 year if I went to trial, [which was] another lie because my sentence guidelines don't come close to what he mislead me to believe." (Id. at 8). Pelletier also argues counsel was

10

ineffective in not negotiating a better sentence *vis-a-vis* others who were also involved in the conspiracy.

Turning to the last argument first, the Government initially took the position that, because Pelletier was involved in the distribution of 1.5 kilograms or more of methamphetamine, he was facing a guide range of 151-188 months which, reduced 3 points for acceptance of responsibility, would result in a Guidelines Range of 108 to 135 months based upon an Offense Level 29, and an estimated Criminal History Category III. Accordingly, the Government proposed a plea agreement containing a provision for a sentence of 168 to 195 months, even though Pelletier's proffer was not of a lot of assistance to prosecutors. (Doc. No. 26-2 at 1). After negotiation, the parties arrived at a sentence of 120 months, which was 48 months lower that the lowest sentence the Government initially proposed. This hardly suggests ineffective negotiation.

Nor was it ineffective for counsel to fail to argue at sentencing about the sentences others in the conspiracy received. Buckholts' goal at the time was to insure that the plea agreement was accepted so that Pelletier did not receive a higher sentence after trial and lose his points for acceptance of responsibility.

Moreover, Pelletier was not sentenced in a vacuum. To the contrary, the Court began the sentencing hearing by pointing out that Brain Randall, the organizer and leader of the conspiracy, had been sentenced the day before to 288 months imprisonment, while Brenda and Herbert McGinnis who sent the methamphetamine to Tennessee each received 150 months. Pelletier was also informed that (1) Matthew Peeden had been sentenced to 120 months; (2) George Marsh had received 106 months; (3) Jason Johnston had received 84 months; and (4) Frank Bishop, Gary Lester, and Sabrina Boblett would be sentenced the next day. In short, it was entirely unnecessary

for counsel to argue where Pelletier fit into the picture. In fact, the Court refused to accept the Plea Agreement at the plea hearing precisely because it wanted to first review Pelletier's Presentence Report that would not only outline his background, but also set forth his involvement in the conspiracy.

Pelletier's argument that his sentence was higher than the statutory maximum or the advisory Guidelines is spurious. Pursuant to statute, Pelletier faced a sentence of 20 years on both Counts One and Twenty-Four, and a mandatory consecutive 5 years on Count Twenty-Five. Run consecutively, this would result in a statutory maximum 45 years, or 540 months.

Under the Guidelines, Pelletier faced a Guideline Range of 110 to 137 months based upon an Offense Level 25 and a Criminal History Category VI, to which 60 months would be added for his Section 924(c) conviction on Count 25. Had Pelletier not pled guilty he would not have received 3 points for acceptance of responsibility, meaning that he would have faced a guidelines range of 140 to 175 months, plus a 60 month consecutive sentence for the gun enhancement. Counsel was hardly ineffective in negotiating a 120 month sentence when Pelletier faced a possible 235 month sentence under the Guidelines, and a 540 month sentence under the relevant statutes.

## IV. Conclusion

On the basis of the foregoing, the Court finds that counsel was not ineffective within the meaning of Strickland and that all of Pelletier's claims to the contrary are without merit. As a consequence, his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) and Amended Motion (Doc. No. 19) alleging ineffective assistance of counsel will be denied and this case will be dismissed with prejudice. Further because Pelletier has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and a reasonable jurist

would not debate this court's rejection of Pelletier's ineffective assistance of counsel claims, <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003), a certificate of appealability will not issue.

An appropriate Order will enter.

                                                 _____
                                                 WAVERLY D. CRENSHAW, JR.
                                                 CHIEF UNITED STATES DISTRICT JUDGE